UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AUREA GONZALEZ

                    Plaintiff,

    v.

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, GOODWILL
INDUSTRIES OF GREATER NY AND
NORTHERN NJ, INC., ROBERT RIVERA,
*Individually* and ZELDA BRYANT ASHBY,
*Individually*,

                    Defendants.

Case No. 1:15-cv-03158 (WFK)(CLP)

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT GOODWILL INDUSTRIES OF GREATER NY AND NORTHERN NJ, INC.'S MOTION TO DISMISS

---

Barbara E. Hoey
John P.J. Mattiace
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Phone: (212) 808-7800
Facsimile: (212) 808-7897
bhoey@kelleydrye.com
jmattiace@kelleydrye.com

*Attorneys for Defendant Goodwill Industries of Greater NY and Northern NJ, Inc.*

NY01\MATTJ\4229648.1

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................. 2

    I.     **The Complaint Does Not Support A Claim That Goodtemps Was Plaintiff's "Joint Employer."** ................................................................. 2

    A.    **Plaintiff Cannot Engage In Discovery Without Adequately Pleading That Goodtemps Is A Joint Employer.** ...................................... 3

    II.    **Even If Goodtemps Was Plaintiff's "Joint Employer," The Facts Pled Do Not Support a Claim.** ................................................................. 5

    III.   **The NLRB's *Browning Ferris* Decision Is Of No Relevance Here, And Cannot Save Plaintiff's Claims From Dismissal.** .......................... 8

    IV.   **Goodtemps Cannot Be Liable For Retaliation.** ........................................ 8

    V.    **Plaintiff Should Not Be Permitted To Amend The Complaint.** .................... 9

    **CONCLUSION** ........................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Arculeo v. On-Site Sales & Marketing, LLC,*
    425 F.3d 193 (2d. Cir. 2005)................................................................................4

*Ayala v. Metro One Sec. Sys., Inc.,*
    2011 U.S. Dist. LEXIS 42325 (E.D.N.Y. Apr. 2011) ........................................4, 5

*Benjamin v. Health & Hosps. Corp.,*
    2009 U.S. Dist. LEXIS 83051 (E.D.N.Y. Sept. 11, 2009).....................................9

*Browning-Ferris Indus. Of California, Inc.,*
    362 NLRB No. 186 (2015) ...................................................................................8

*Da Silva v. Kinsho Int'l Corp.,*
    229 F.3d 358 (2d Cir. 2000)..............................................................................3, 4

*Dias v. Cmty. Action Project, Inc.,*
    2009 U.S. Dist. LEXIS 17562 (E.D.N.Y. Mar. 4, 2009) ......................................2

*Duarte v. Tri-State Physical Med. & Rehab., P.C.,*
    2012 U.S. Dist. LEXIS 96249 (S.D.N.Y. July 10, 2012) .....................................4

*Farzan v. Wells Fargo Bank, N.A.,*
    2013 U.S. Dist. LEXIS 169743 (S.D.N.Y. Dec. 2, 2013) .....................................3

*Fenner v. News Corp.,*
    2013 U.S. Dist. LEXIS 170187 (S.D.N.Y. Dec. 2, 2013) .....................................9

*Kilgore v. Ocwen Loan Servicing, LLC,*
    13-CV-5473, 2015 U.S. Dist. LEXIS 29756 (E.D.N.Y. Mar. 6, 2015)..................9

*Lauren v. Pokoik,*
    2004 U.S. Dist. LEXIS 4066 (S.D.N.Y. Mar. 15, 2004) ...................................2, 3

*Lima v. Adecco,*
    634 F. Supp. 2d 394 (S.D.N.Y. 2009).....................................................................6

*McDougal v. State Univ. of N.Y. Downstate Med. Ctr.,*
    2013 U.S. Dist. LEXIS 51087 (E.D.N.Y. Apr. 9, 2013) ......................................5

*Murray v. Miner,*
    74 F.3d 402 (2d Cir. 1996)......................................................................................4

*Sosa v. Medstaff, Inc.,*
    No 12-CV-8926, 2013 U.S. Dist. Lexis 175278 (S.D.N.Y. Dec. 12, 2013)................... *passim*

## <u>TABLE OF AUTHORITIES (CONT.)</u>

<u>Page</u>

*Triola v. ASRC Mgmt. Servs. (ASRC MS)*,
    No. 10-CV-560, 2011 U.S. Dist. Lexis 142429 (E.D.N.Y. Dec. 12, 2011)...................1, 2, 3, 7

*Woodman v. WWOR-TV, Inc.*,
    411 F.3d 69 (2d Cir. 2005)................................................................................................6, 7

**Statutes**

Fair Labor Standards Act...................................................................................................4

New York City Human Rights Law....................................................................................8

New York Labor Law........................................................................................................4

## PRELIMINARY STATEMENT[1]

This Reply is submitted by Defendant Goodwill Industries of Greater NY and Northern NJ, Inc. ("Goodwill" and/or "Goodtemps"), in further support of its Motion to Dismiss. Goodtemps, a division of Goodwill, is the staffing agency which placed Plaintiff at her job with the New York City Department of Education (the "DOE"). Goodtemps had no control over Plaintiff's employment with the DOE, other than the fact that it placed her and issued her paychecks. This is not enough to establish that Goodtemps should be held liable as a "joint employer" for the discrimination or retaliation which Plaintiff claims happened at the DOE.

Plaintiff's Opposition ignores the controlling case law cited by Goodtemps, thus making it clear that Plaintiff does not possess sufficient facts to support her claim that Goodtemps was her "joint employer." For one, the law is clear that the fact that Goodtemps issued Plaintiff her paychecks is not enough to make it her joint employer. *See Sosa v. Medstaff, Inc.*, No 12-CV-8926, 2013 U.S. Dist. Lexis 175278, at *8-9 (S.D.N.Y. Dec. 12, 2013) (dismissing claims when agency paid wages); (Def. Mov. Br., at p. 8). Moreover, Plaintiff's speculation that Goodtemps "may" have been "empowered" to control the terms of her employment, without some facts to back this up, are also insufficient to keep Goodtemps in this case. Plaintiff fails to distinguish or even mention *Triola v. ASRC Mgmt. Servs. (ASRC MS)*, No. 10-CV-560, 2011 U.S. Dist. Lexis 142429 (E.D.N.Y. Dec. 12, 2011), and *Sosa*, 2013 U.S. Dist. Lexis 175278. In those cases, both closely analogous to the instant case, complaints against staffing agencies were dismissed because the plaintiffs did not sufficiently allege *specific* facts which showed that: (i) the agency had control over her employment (*Triola*); or (ii) the agency had some control over the person who discriminated against the plaintiff (*Sosa*). The courts in *Triola* and *Sosa* did not allow the plaintiffs

---

[1]     Any facts recited in in this reply memorandum of law are drawn from Plaintiff's Complaint, which Goodtemps accepts as true for the purposes of this Motion to Dismiss only. (*See* Dkt. No. 1).

to embark on discovery based on such conclusory allegations. This Court should reach the same result.

Simply put, the Complaint here recites only conclusory allegations. It does not allege any facts which would support a finding Goodtemps was involved in any aspect of Plaintiff's employment with, or her termination from, the DOE. Nor does it allege any facts that show Goodtemps had any connection to, or control over, the alleged discriminatory conduct. Further, the Complaint cannot be rehabilitated with additional facts in an amended pleading, as such facts do not exist. Thus, the Complaint fails to state a cognizable claim against Goodtemps.

## ARGUMENT

**I.    The Complaint Does Not Support A Claim That Goodtemps Was Plaintiff's "Joint Employer."**

*Triola*, 2011 U.S. Dist. Lexis 142429, is on point here and holds that when, as here, plaintiff makes conclusory allegations that a staffing agency has "control" over her employment, without alleging any facts showing such control, the complaint should be dismissed. *Id.* at *18-20. Plaintiff ignores *Triola*, conceding Goodtemps' argument that it supports dismissal of her Complaint.

Plaintiff relies on several readily distinguishable cases to support her misguided argument that she has sufficiently pled a joint employer relationship. First, she cites to *Dias v. Cmty. Action Project, Inc.*, 2009 U.S. Dist. LEXIS 17562 (E.D.N.Y. Mar. 4, 2009), and *Lauren v. Pokoik*, 2004 U.S. Dist. LEXIS 4066 (S.D.N.Y. Mar. 15, 2004). Neither even analyze claims in the staffing agency context. Moreover, both cases found joint employment only after an analysis of the many deep connections between the alleged joint employers and the plaintiff. For instance, in *Dias*, both companies were deeply involved in the monitoring, evaluation, and training of employees. *Dias*, 2009 U.S. Dist. LEXIS 17562, at *17. In *Pokoik*, both companies shared offices, ownership, and

specific business operations, including giving employment tasks to plaintiff herself. *Pokoik*, 2004 U.S. Dist. LEXIS 4066, at *29-31. Such facts are not alleged here.

Plaintiff's reliance on *Farzan v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 169743 (S.D.N.Y. Dec. 2, 2013) is also misplaced. The court there granted summary judgment for the defendants. *Id.* at *2. Further, the staffing agency and its client were held to only be *possibly* liable as joint employers, because the entities **acted in concert** to hire plaintiff, and **jointly deliberated** in his termination, such that they "both exercis[ed] authority over his initial and continued access to employment." *Id.* at *51. The Complaint here does not allege Goodtemps was involved in Plaintiff's hiring or firing by the DOE.

### A. Plaintiff Cannot Engage In Discovery Without Adequately Pleading That Goodtemps Is A Joint Employer.

Plaintiff argues that Goodtemps' Motion should be denied and "[she] should be afforded the opportunity to conduct discovery," to establish the facts that she could not plead in the first instance. (Pl. Opp. Br., at p. 5-6, 8-9). This argument is wrong. The plaintiff in *Triola* made the same argument – e.g., that "he should be given the opportunity to establish through discovery . . . that [the two entities at issue] were joint employers." *Triola*, 2011 U.S. Dist. Lexis 142429, at *18. The Court rejected it, holding that plaintiff needed to do more than advance conclusory allegations that there was "the requisite means and manner of control . . . to qualify as a joint employer." *Id.* at *19. Likewise, Plaintiff cannot rely on conclusory allegations that Goodwill was "empowered" to exercise control, she must allege **facts** to back them up. *Triola* makes that clear.

The cases Plaintiff relies on are all distinguishable. For instance, the case of *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358 (2d Cir. 2000) did no analysis of discovery in the joint employer context, and instead analyzed whether the district court should have dismissed Plaintiff's Title VII claim for lack of subject matter jurisdiction. *Id.* at 365. Aside from being procedurally inapposite,

the Second Circuit noted that the district court found _no single employer_ relationship there.[2] _Id._

Plaintiff's reliance on _Duarte v. Tri-State Physical Med. & Rehab., P.C._, 2012 U.S. Dist. LEXIS 96249 (S.D.N.Y. July 10, 2012) is also misplaced as it analyzed joint employment under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). _Id._ at *21. The "economic realities test" is the standard for joint employment under the FLSA and NYLL, which involves an analysis of specific factors relating to the payment of wages. _Id._ at *22. These factors are not appropriate for, and have not been applied by courts in, discrimination cases. Moreover, the _Duarte_ case is factually inapposite as it found that a joint employment relationship existed because, as the court put it, plaintiff "detail[ed] specific functions" jointly carried out for both of the relevant entities in that case. _Id._ at *24-25. Things like "sending invoices, scheduling appointments, [and] translating," as well as the fact that correspondence was jointly addressed to the two entities on a seemingly regular basis. _Id_. Plaintiff has not pled such detail here.

The same goes for Plaintiff's reliance on _Ayala v. Metro One Sec. Sys., Inc._, 2011 U.S. Dist. LEXIS 42325 (E.D.N.Y. Apr. 2011). That Court allowed discovery to proceed, but only after it found that plaintiff _alleged specific facts_, including that the two entities at issue shared an office, a single chief executive officer, controlling shares of the companies' stock, and hiring practices. _Id._ Plaintiff's Complaint alleges no such facts.

The case of _McDougal v. State Univ. of N.Y. Downstate Med. Ctr._, 2013 U.S. Dist. LEXIS 51087 (E.D.N.Y. Apr. 9, 2013) is also readily distinguishable. Plaintiff cites to it for the

---

[2]       Notably, _Da Silva_ is also inapposite because it only dealt with the application of "single employer" analysis as opposed to "joint employer" analysis.  Single employer analysis is applied to nominally separate entities that are alleged to be a single integrated enterprise; i.e. the argument is that they are not really separate.  _See Murray v. Miner_, 74 F.3d 402, 405 (2d Cir. 1996).  By contrast, joint employer analysis is applied to situations where, like here, it is conceded that two entities are separate, yet they both exercise sufficient control over an employee to be called joint employers of that employee.  _See Arculeo v. On-Site Sales & Marketing, LLC_, 425 F.3d 193, 198 (2d. Cir. 2005).  This distinction is important because the standards for each are different. _Da Silva_ applies the wrong one and should be rejected for that reason alone.

proposition that, "the joint employer doctrine permits Plaintiff the opportunity to prove Defendant Goodtemps is liable."  (Pl. Opp. Br. at p. 8).  *McDougal* could not be more wrongly characterized. First, it was decided in the context of the defendant's motion to join a staffing agency as a required party under Rule 19(a), and therefore is procedurally inapposite. *McDougal*, 2013 U.S. Dist. LEXIS 51087, at *11-12. Further, there were also facts clearly supporting joint employment in that case. In particular, there was a contract in place that expressly made the staffing agency a "co-employer." *Id.* at *14-15. Moreover the staffing agency actually agreed that it was the plaintiff's employer and asserted sole responsibility for disciplining and terminating the plaintiff. *Id.* at *14. Plaintiff has not pled facts similar to those in *McDougal*.

## II.    Even If Goodtemps Was Plaintiff's "Joint Employer," The Facts Pled Do Not Support a Claim.

Even if the Court found that the issuance of Plaintiff's paychecks by Goodtemps is enough to make it Plaintiff's "joint employer," the claims against Goodtemps should still be dismissed, as Plaintiff does not allege that Goodtemps controlled the DOE manager who allegedly discriminated against her.  Plaintiff ignores *Sosa v. Medstaff, Inc.*, No 12-CV-8926, 2013 U.S. Dist. Lexis 175278 (S.D.N.Y. Dec. 12, 2013), which is directly on point. Just as here, the plaintiff in *Sosa* was trying to hold a staffing agency (Medstaff) liable for alleged discrimination by a supervisor at the hospital where Medstaff had placed her. Just as here, Medstaff's only involvement was the job placement and its issuance of paychecks to plaintiff. Significantly, the Court found that even though there were sufficient facts pled to show that Medstaff could be plaintiff's joint employer, the claims against the agency could not stand – as the complaint contained no facts showing that the staffing agency had any involvement in the wrongful conduct. *Id.*, at *11. The Court explained, "[i]n evaluating alleged discriminatory activity in the joint employment context, the appropriate focus is on the <u>actual decisionmaker</u> – the conduct of one employer cannot necessarily be imputed to the

other." *Id.*, at * 10 (emphasis added). Importantly, the Court noted that the plaintiff did not claim that anyone at the agency was in a position to "control the activities of [the supervisor]." *Id.* at *10. Thus, even if the agency was a "joint employer," the Court held that it could not be liable and dismissed the complaint.

To the extent Plaintiff implies that *Sosa* is not binding because it is out of the Southern District, *Sosa* relied on the Second Circuit's decision in *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69 (2d Cir. 2005). *Woodman* makes clear that Plaintiff must show the alleged joint employer had some actual connection to unlawful conduct, in the form of knowledge and decision-making power, before the conduct of one employer can be imputed to another. *Id.* at 89. Thus, under *Triola, Woodman* and *Sosa*, Plaintiff cannot rely on conclusory allegations that Goodtemps was "empowered" to "control" her job at the DOE. Plaintiff must plead facts showing that Goodtemps had a *connection* to the unlawful conduct. This requires facts showing Goodtemps had both the *power* to control such conduct, **and** then a failure to exercise that power. *Sosa*, 2013 U.S. Dist. Lexis 175278, at *10-11; *See also Lima v. Adecco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009) (holding that plaintiff must allege facts that "the joint employer knew or should have known of the [discriminatory] conduct and failed to take corrective measures within its control."). Again, the Complaint does not allege that.

Plaintiff argues that allegations in Paragraph 53 of the Complaint establish that Goodtemps "should have known" about the alleged discriminatory conduct, because she allegedly reported it – *after* **she was fired** by the DOE.  (Pl. Opp. Br. at pp 7-9). First, by admitting she did not report the conduct until after she was fired, Plaintiff concedes that Goodtemps could not have had knowledge of it or the ability to prevent it. Moreover, Plaintiff's claim that some alleged "suspicious reaction" by Mr. Dixon establishes that a "close relationship that exists between a

staffing agency and its client" is pure speculation.

Plaintiff cites no authority holding that "suspicious activity" establishes the "closeness" of two completely separate entities. Nor does she cite any case holding that informing one entity of discrimination, **after** being fired by another, establishes that the agency was a joint employer. Again, *Sosa* and *Woodman* require that Plaintiff show that Goodtemps had a connection to the unlawful conduct in the form of actual knowledge of it, **and** the ***power*** to control such conduct. *Sosa*, 2013 U.S. Dist. Lexis 175278, at \*10-11.  No such facts are alleged in this case.

Plaintiff also desperately clings to the baseless argument that Goodtemps allegedly failed to place her in another job after she was terminated from the DOE and that this allegation somehow makes Goodtemps liable to her. Plaintiff misses the point here because, even if true, she has to first plead facts that show Goodtemps had control over her, and had some connection to the unlawful conduct as explained in *Sosa* and *Woodman*. (Def. Mov. Br., at pp 5-6). A conclusion that the mere power to help "place" an individual at a client makes a staffing agency a joint employer would turn the entire joint employment regime analyzed in *Triola*, *Sosa*, and *Woodman*, completely on its head. It would essentially work to make every staffing agency an "employer" for purposes of employment laws simply because they somehow "failed" to place an employee in a job. The reality is that it is not up to any staffing agency, Goodtemps included, to determine whether an individual is hired by any employer. It has no control over such placements, just as it has no control over the way in which employers treat the placed employees once they are hired. This is particularly why the element of "control" as set forth in *Triola* and *Sosa* is required before liability can attach to a staffing agency. It would simply be inequitable and unfair otherwise. Further, Goodtemps argued at length in its moving brief that courts do not impose on staffing agencies "unrealistic burdens" to avoid employment discrimination liability. (Def. Mov. Br., at pp.

9-11). Yet, that is what Plaintiff proposes with her "failure to place" argument. There is no authority to support such an absurdity.

## III.    The NLRB's *Browning Ferris* Decision Is Of No Relevance Here, And Cannot Save Plaintiff's Claims From Dismissal.

In a sign of desperation, Plaintiff cites to the National Labor Relations Board's ("NLRB's") recent decision in *Browning-Ferris Indus. Of California, Inc.*, 362 NLRB No. 186 (2015) as support for her contention that she has sufficiently pled facts establishing joint employment. It held that merely having a "right" to control terms and conditions of employment (as opposed to direct and immediate control) is sufficient to create a joint employer. *Browning Ferris* has no application here. First, it is an agency decision that is not binding on any federal court. Further, it overturned decades of established NLRB authority applying the joint employer standard in a labor context, and no federal court in New York (or elsewhere) has yet reviewed or applied the decision, let alone approved of it. Moreover, the decision itself was in the context of whether employees are jointly employed by a staffing agency and its client *for the purposes of collective bargaining*. It did not analyze joint employer pleading standards in a Motion to Dismiss at all. Finally, even if *Browning-Ferris* did somehow apply to Plaintiff's case, it would not change the result. There are no facts that suggest that Goodtemps had the "right" to control Plaintiff's employment with the DOE.

## IV.    Goodtemps Cannot Be Liable For Retaliation.

Plaintiff misses the mark when she attempts to argue that she has stated claims for retaliation and unlawful interference of rights under the New York City Human Rights Law ("NYCHRL"). Plaintiff again fails to recognize that the threshold issue is whether Goodtemps is Plaintiff's employer. Since Goodtemps was not Plaintiff's employer, a claim against it for retaliation or interference of rights cannot lie as a matter of law.  *See Fenner v. News Corp.*, 2013 U.S. Dist. LEXIS 170187, at *33 (S.D.N.Y. Dec. 2, 2013) (all of plaintiff's claims failed as a

matter of law because there was no evidence of a single employer or joint employer relationship).[3]

## V.   Plaintiff Should Not Be Permitted To Amend The Complaint.

The District Court can deny leave to amend a complaint for futility, bad faith, undue delay, or undue prejudice. *Kilgore v. Ocwen Loan Servicing, LLC*, 13-CV-5473, 2015 U.S. Dist. LEXIS 29756 at *27 (E.D.N.Y. Mar. 6, 2015). Leave to amend will be denied as futile "if the proposed new claim cannot withstand a 12(b)(6) [Motion to Dismiss], i.e., if it appears beyond doubt that the plaintiff[s] can plead no set of facts that would entitle [them] to relief." *Id.* (quoting *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)).

Plaintiff requests that she be granted leave to amend her Complaint to add allegations that Goodtemps paid Plaintiff her wages, and allegedly failed to place Plaintiff with another employer following her termination from the DOE and her post-hoc complaints of discrimination. Such allegations, even if taken as true, would not save Plaintiff's claims against Goodtemps, and therefore it would be futile for the Court to allow an amendment. Indeed, such additional allegations would not change the fact that the Complaint states numerous facts that establish the DOE as the actual entity that had control over her employment. (Def. Mov. Br., at p. 7). No set of facts, including the payment of wages by Goodtemps, can change those allegations.

Moreover, courts have dismissed complaints that allege a staffing agency paid the plaintiff because it does not indicate that the staffing agency had the requisite amount of control required

---

[3]      In making the argument that she has stated a retaliation claim, Plaintiff attempts to rely on the allegation that Mr. Dixon's alleged response to her "complaint" about the DOE's alleged conduct somehow shows that Goodtemps was aware of Plaintiff's complaints prior to her termination.  Aside from being irrelevant since Goodtemps cannot be established as Plaintiff's employer, such an argument is also nonsensical.  Plaintiff herself pled that her interactions with Mr. Dixon came *after* she was terminated.  (See Compl. ¶¶ 50-53). Plaintiff therefore cannot establish that there is the required causal connection between her protected activity (here, her alleged "complaint" to Mr. Dixon), and her termination, since the complaint came after the termination. *Benjamin v. Health & Hosps. Corp.*, 2009 U.S. Dist. LEXIS 83051, at *31 (E.D.N.Y. Sept. 11, 2009) ("[a]s a matter of law, there is no causal relationship between protected activity that occurs after a materially adverse event.").

to be a joint employer. (Def. Mov. Br., at p. 8); *See Sosa*, 2013 U.S. Dist. Lexis 175278, at *8-9 (dismissing complaint notwithstanding payment of wages). Plaintiff ignores all of Goodtemps' arguments on this point in her opposition, effectively conceding all of them. Further, as argued above, the allegation that Goodtemps allegedly failed to place Plaintiff in another job after the DOE terminated her falls completely short of what is required to make Goodtemps her employer. Pleading it would also not rehabilitate her Complaint.

Given the foregoing, Plaintiff cannot rehabilitate her claims against Goodtemps with an amended pleading and this Court should dismiss the Complaint with prejudice as to Goodtemps.

## CONCLUSION

For all the foregoing reasons, Goodtemps requests that the Court dismiss the Complaint, with prejudice, for failure to state a cause of action under Fed. R. Civ. P. 12(b)(6).

Dated: New York, New York
       November 6, 2015

Respectfully submitted,

*s/Barbara E. Hoey*

Barbara E. Hoey
John P.J. Mattiace
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Phone: (212) 808-7800
Facsimile: (212) 808-7897
bhoey@kelleydrye.com
jmattiace@kelleydrye.com

*Attorneys for Defendant Goodwill Industries of Greater NY and Northern NJ, Inc.*