FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ SEP 29 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
AUREA GONZALEZ,

           Plaintiff,

    v.

NEW YORK CITY DEPARTMENT OF
EDUCATION, ROBERT RIVERA, and
ZELDA BRYANT-ASHBY,

           Defendants.
------------------------------------------------------X

**DECISION & ORDER**
15-CV-3158 (WFK) (CLP)

**WILLIAM F. KUNTZ, II, United States District Judge:**

Aurea Gonzalez ("Plaintiff") brings this action against her former employer and supervisors, the New York City Department of Education (the "DOE"), Robert Rivera ("Rivera"), and Zelda Bryant-Ashby ("Bryant-Ashby") (collectively, "Defendants")[1] for gender-based employment discrimination and retaliation. Specifically, Plaintiff alleges that Rivera subjected her to a hostile work environment and Bryant-Ashby retaliated against her for reporting Rivera's sexual harassment, both in violation the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, and that the DOE is liable for such discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 & 2000e-3.[2] *See generally* Compl., ECF No. 1. Defendants now move for summary judgment as to all of Plaintiff's claims. For the reasons that follow, Defendants' motion is DENIED.

## BACKGROUND[3]

Plaintiff was employed by the DOE as a customer service representative in its School Foods Services Department ("School Foods") from September 19, 2013, to December 4, 2013.

---

[1] Plaintiff's Complaint also asserts claims against the City of New York ("the City") and Goodwill Industries of Greater NY and Northern NJ, Inc. ("Goodwill"). *See generally* Compl., ECF No. 1. Plaintiff voluntarily dismissed all of her claims against the City, *see* ECF No. 21, however, and this Court granted Goodwill's motion to dismiss all of Plaintiff's claims against it, *see* ECF No. 29. The caption has been amended accordingly.

[2] Plaintiff also voluntarily dismissed all of her NYCHRL claims against the DOE; her NYCHRL claim for aiding and abetting discrimination against Rivera and Bryant-Ashby; and her NYCHRL discrimination claim against Bryant-Ashby, *see* ECF No. 21, and this Court dismissed her NYCHRL retaliation claim against Rivera, *see* ECF No. 29, leaving only the four claims outlined above.

[3] The Court draws its account of the facts from the parties' submissions in support of and in opposition to Defendants' motion for summary judgment, including: Defendants' memorandum of law in support of their motion ("Def. Br."), ECF No. 45-9; the declaration in support of the motion ("Murrell Decl."), ECF No. 45-1, and attached exhibits, ECF Nos. 45-3 to 45-8; Plaintiff's memorandum of law in opposition to the motion ("Pl. Resp."), ECF No. 46; the declaration in support of Plaintiff's opposition ("Schwartz Decl."), ECF No. 46-1, and attached exhibits, ECF Nos. 46-3 to 46-5; Defendants' reply memorandum of law ("Def. Reply"), ECF No. 47; Defendants' Local

*See* Pl. 56.1 ¶¶ 10, 13, 24, 31, 35, 36. During the bulk of her employment there—specifically, the first two months and final three days—she worked in the Eligibility & Compliance unit of School Foods. *Cf. id.* ¶¶ 15, 30, 56-57. For approximately five days, ending no later than November 29, 2013,[4] however, she worked in the Special Events unit of School Foods under the direct supervision of Rivera. *See* Pl. 56.1 ¶¶ 15, 20, 30; *see also id.* ¶¶ 44, 56-57. During Plaintiff's time at the DOE, Bryant-Ashby was the Director of the Eligibility & Compliance unit, and Dillard Campbell was the Director of the Special Events unit. *Id.* ¶¶ 10, 16; *see also id.* ¶ 38 (noting that Bryant-Ashby was the supervisor with whom Plaintiff had the most contact while working in School Foods).

This action centers on Rivera's conduct during the time in which he supervised Plaintiff and the circumstances surrounding Bryant-Ashby's decision, made shortly after Plaintiff complained to her about Rivera's conduct, to terminate Plaintiff's employment. Specifically, it is undisputed that, at some point during the time he supervised Plaintiff, Rivera made a comment about her and another female employee's hair that he admitted during his deposition was

---

Civil Rule 56.1 statement ("Def. 56.1"), ECF No. 45-2; and Plaintiff's response to Defendants' 56.1 statement and counter-statement ("Pl. 56.1"), ECF No. 46-2. Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein. Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence and denied by the other party with only a conclusory statement without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true. *See* E.D.N.Y. Local Rule 56.1(c), (d). Some exhibits are attached to both parties' declarations; citations to a jointly cited exhibit that use only one citation are for convenience.

[4] The parties appear uncertain what day Plaintiff was transferred to the Special Events unit, but they seem to agree that she worked there for approximately five days in late November 2013, beginning before the Thanksgiving holiday, and that she returned to the Eligibility & Compliance unit on Monday, December 2, 2013. *See* Pl. 56.1 ¶¶ 15, 29-30; *see also* Schwartz Decl. Ex. A ("Gonzalez Dep.") at 25, 27, 52, 63, 81, ECF No. 46-3; Murrell Decl. Ex. B ("Bryant-Ashby Dep.") at 58-59, 85, 88-89, 105, 126, ECF No. 45-4. There is also evidence that Plaintiff was absent from work on Thursday, November 21, 2013, *see* Murrell Decl. Ex. E ("Attendance Report") at 3, ECF No. 45-7, and that School Foods employees were given two days off—Thursday, November 28, 2013 and Friday, November 29, 2013—in observance of Thanksgiving, *see* Gonzalez Dep. at 58-59; *cf.* Attendance Report at 3. Accordingly, although the precise date is not material to resolving the instant motion, the Court operates on the assumption that Plaintiff began working in the Special Events unit no earlier than Wednesday, November 20, 2013, and no later than Monday, November 25, 2013.

inappropriate. *Id.* ¶¶ 28, 50. In her deposition, Plaintiff also testified to several other instances of sexual harassment by Rivera, which Defendants have not refuted, including the following:

- Before Plaintiff transferred to the Special Events unit, Rivera would stop and stare at her as she walked down the hall in a way that made her feel uncomfortable, *id.* ¶ 43;

- On the first day Plaintiff worked for Rivera in the Special Events unit, he grabbed her knee under his desk "in an inappropriate manner" on two separate occasions, *id.* ¶ 48, both times while repeating, "it's going to be okay, it's ok," *id.*;

- On several occasions when Plaintiff spoke with female co-workers at or near her desk, Rivera commented that he was going to put a barrier around her so no one could talk to her, *id.* ¶¶ 25, 53; *cf.* Murrell Decl. Ex. C ("Rivera Dep.") at 127, ECF No. 45-5 ("Q: Did you ever say that you were going to put a barrier around Ms. Gonzalez so that no one could talk to her? A: I don't recall saying anything like that. Q: But you might have? . . . A: I'm not sure.");

- On or about Tuesday, November 26, 2013, Rivera approached Plaintiff from behind and grabbed her hips and buttocks, while again repeating, "it's okay," Pl. 56.1 ¶¶ 49, 54; and

- As a result, Plaintiff was so frightened of Rivera that she spent much of the next day, Wednesday, November 27, 2013, in the restroom to avoid having to be near him, *id.* ¶ 54.

It is further undisputed that, on the morning of Monday, December 2, 2013, Plaintiff reported to Bryant-Ashby that Rivera had touched her inappropriately while she was under Rivera's supervision—prompting Bryant-Ashby immediately to transfer Plaintiff back to the Eligibility & Compliance unit under her supervision—and that, on December 4, 2013, Bryant-Ashby informed Rivera that the DOE had decided to let her go. *Id.* ¶¶ 29, 31; *see also id.* ¶¶ 56-57, 61-62.

On June 1, 2015, Plaintiff filed her Complaint in this case. *See* ECF No. 1. On November 6, 2015, the City, Goodwill, and Defendants filed fully briefed motions to dismiss the Complaint, *see* ECF Nos. 20-25, which the Court granted in part and denied in part on December 22, 2015, *see* ECF No. 29. On December 2, 2016, Defendants filed the instant fully briefed motion for summary judgment. *See* ECF Nos. 45-47.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" by citation to materials in the record, including depositions, affidavits, declarations, and electronically stored information. Fed. R. Civ. P. 56(a)-(c). In evaluating a motion for summary judgment, courts must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation and internal quotation marks omitted). The role of the district court is not to weigh the evidence and determine the truth of the matter, but rather to answer "the threshold inquiry of whether there is the need for a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Courts must therefore consider whether the record could "lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party carries its preliminary burden, the burden shifts to the non-movant to raise the existence of "specific facts showing that there is a genuine issue for trial." *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009) (Wexler, J.) (quoting *Matsushita*, 475 U.S. at 586). "The mere existence of a scintilla of evidence" in support of the non-movant will not defeat a summary judgment motion, *Anderson*, 477 U.S. at 252, nor will conclusory statements, devoid of specifics, *see Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the non-moving party must establish the existence of each element constituting its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[A] complete failure of proof concerning an essential element of the

non-moving party's case necessarily renders all other facts immaterial."). Finally, "[a]lthough summary judgment is proper where there is 'nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony,' there is a 'need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent.'" *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (citations omitted) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005), and *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)).

## DISCUSSION

### I. Hostile Work Environment

Defendants first assert that, even if Rivera did commit the harassing conduct Plaintiff has alleged, such conduct is not objectively severe or pervasive enough to be actionable under either Title VII or the NYCHRL. The Court strongly disagrees.

#### A. Title VII

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). Relevant here, this burden has both subjective and objective elements: "[a] plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive," *id.* (citing *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)), viewed from the perspective of a reasonable person in the plaintiff's position, *see Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012).

"In considering whether a plaintiff has met this burden, courts should 'examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quoting *Hayut*, 352 F.3d at 745). Finally, courts "must also consider the extent to which the conduct occurred because of the plaintiff's sex." *Gorzynski*, 596 F.3d at 102 (citing *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

As an initial matter, Defendants do not contest that Plaintiff subjectively perceived her environment to be hostile and abusive—indeed, that fact is well-supported by her testimony that she was so nervous and frightened of Rivera that she hid from him in the bathroom. *See* Gonzalez Dep. at 56-59. Nor do they attempt to argue that the alleged instances of Rivera grabbing and squeezing Plaintiff's knees, hips, and buttocks were gender-neutral or devoid of sexual overtones. *See* Def. Br. at 7; Def. Reply at 6. Instead, they assert that such conduct is not objectively severe or pervasive—in other words, that a reasonable person in Plaintiff's position, considering all the circumstances, would not find it so. Defendants are wrong.

The Second Circuit has held that "[t]he repeated touching of intimate parts of an unconsenting employee's body is by its nature severely intrusive and cannot properly be characterized as abuse that is 'minor.'" *Redd*, 678 F.3d at 179. Rather, "[d]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment." *Id.* at 180. Accordingly, numerous courts in this Circuit have found allegations similar to Plaintiff's to be sufficient to withstand motions for summary judgment. *See, e.g., Redd*, 678 F.3d at 178-82 (vacating grant of summary judgment in favor of employer where plaintiff had alleged her supervisor intentionally touched her breasts on three occasions); *Dillon v. Ned Mgmt.*, 85 F.

6

Supp. 3d 639, 656, 663 (E.D.N.Y. 2015) (Weinstein, J.) (finding plaintiff's allegation that her supervisor had grabbed her buttock on one occasion precluded summary judgment in favor of her employer because "[a] single incident of contact with an intimate body part is sufficient to establish a hostile work environment claim"); *Wahlstrom v. Metro-N. Commuter R.R. Co.*, 89 F. Supp. 2d 506, 520-21 (S.D.N.Y. 2000) (Leisure, J.) (finding plaintiff's allegation that her supervisor had slapped her buttocks on one occasion precluded summary judgment in favor of her employer); *cf. Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186-86 (E.D.N.Y. 2012) (Glasser, J.) (noting that "[i]ntentionally grabbing, squeezing, or otherwise feeling an intimate part of another's body is vastly different than brushing against it—whether on purpose or by accident" and finding plaintiff's allegation that her supervisor had grabbed and squeezed one of her breasts on one occasion was sufficient to defeat employer's motion to dismiss). As in those cases, Plaintiff's uncontradicted testimony here that Rivera grabbed and squeezed her knees, thighs, and buttocks on multiple occasions is more than sufficient to support a jury finding that Rivera created an objectively hostile work environment in violation of Title VII.

In support of their contention that Rivera's conduct was not objectively severe or pervasive, Defendants cite to two summary orders and two district court decisions. Perhaps recognizing that these cases do little to bolster their argument, however, Defendants decline to offer any analysis of them. Indeed, these cases are readily distinguishable, as they all involve harmless and/or accidental physical contact, in stark contrast to the intentional touching of an intimate body part that is alleged here. *Cf. Mendez-Nouel v. Gucci Am., Inc.*, 542 F. App'x 12, 13 (2d Cir. 2013) (summary order) (affirming grant of summary judgment in favor of employer where, *inter alia*, "the record indicate[d] two instances of touching, the more significant being an incident in which [plaintiff's] supervisor touched his lower back for four to five seconds"); *Vito*

7

*v. Bausch & Lomb Inc.*, 403 F. App'x 593, 596-97 (2d Cir. 2010) (summary order) (affirming grant of summary judgment in favor of employer where, *inter alia*, plaintiff gave unclear and conflicting deposition testimony regarding several instances of allegedly inappropriate physical contact, including that one of her supervisors had "pushed against the back of her chair and touched part of her back and side" on one occasion and touched her shoulder on at least two occasions, and that another supervisor had once touched her shoulder and/or possibly the side of her breast); *Magnusson v. County of Suffolk*, 14-CV-3449, 2016 WL 2889002, at *9-10 (E.D.N.Y. May 17, 2016) (Fueurstein, J.) (granting summary judgment in favor of employer where, although the court found "[t]here is little doubt that a jury might reasonably conclude that a male supervisor subjecting a subordinate female employee to a scantily-clad photo and body-measurement session under coercive circumstances and then showing those photographs to co-workers . . . is both severe and humiliating," the two alleged incidents occurred more than nine years apart and there were no credible allegations that they interfered with plaintiff's job performance from either a subjective or objective viewpoint); *Geller v. N. Shore Long Island Jewish Health Sys.*, 10-CV-0170, 2013 WL 5348313, at *7-8 (E.D.N.Y. Sept. 23, 2013) (Seybert, J.) (granting summary judgment in favor of employer where the record showed, *inter alia*, only "one potentially inappropriate touching of [plaintiff's] knee over a five year period"). Defendants thus fail to show they are entitled to judgment as a matter of law as to Plaintiff's Title VII hostile work environment claim.

    **B.**    **NYCHRL**

Moreover, as Defendants concede, "[t]he standard for liability under NYCHRL is more permissive than the standard for liability under Title VII, in that offensive conduct need not be 'severe or pervasive'; rather, it need only amount to 'unwanted gender-based conduct.'" *James*

*v. N.Y.C. Health & Hosps. Corp.*, 15-CV-6015, 2017 WL 3923675, at *11 (S.D.N.Y. Sept. 6, 2017) (Engelmayer, J.) (quoting *Anderson v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (1st Dep't 2009)) (citing *Anderson v. Davis, Polk & Wardwell, LLP*, 10-CV-9338, 2013 WL 1809443, at *2 (S.D.N.Y. Apr. 29, 2013)); *accord Dillon*, 85 F. Supp. 3d at 664. Given that Defendants have failed to show they are entitled to summary judgment under Title VII, as discussed above, they are similarly not entitled to summary judgment under the more expansive standard of the NYCHRL. Indeed, Plaintiff has produced evidence more than sufficient for a reasonable jury to conclude that Rivera's unwanted sexual advances created a hostile work environment under City law. Accordingly, Defendants' motion for summary judgment as to both of Plaintiff's hostile work environment claims must be denied.

## II. Retaliation

Defendants next argue that they have articulated legitimate, non-retaliatory reasons for terminating Plaintiff and that she has failed to establish that her complaint of sexual harassment was a but-for cause of her termination. Again, the Court disagrees.

### A. Title VII

Title VII retaliation claims are analyzed under the well-known *McDonnell Douglas* burden-shifting framework. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). "Under that framework, a plaintiff must first establish a *prima facie* case by showing '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Sattar v. U.S. Dep't of Homeland Sec.*, 669 F. App'x 1, 2 (2d Cir. 2016) (summary order) (quoting *Hicks*, 593 F.3d at 164); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "This showing creates a 'presumption of retaliation,' which the defendant

9

may rebut by 'articulat[ing] a legitimate, non-retaliatory reason for the adverse employment action.'" *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). If the defendant provides such an explanation, then the presumption of retaliation is overcome, and "the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000); *accord Kwan*, 737 F.3d at 845 (same).

As a preliminary matter, Defendants appear to concede that Plaintiff has met her burden of establishing a *prima facie* case of retaliation, which has been characterized as "minimal" and "*de minimis*." *E.g.*, *Kwan*, 737 F.3d at 844 (quoting *Jute*, 420 F.3d at 173). Indeed, there is no material dispute that: (1) Plaintiff participated in a protected activity by reporting Rivera's sexual harassment to Bryant-Ashby and the internal Equal Employment Opportunity department at the DOE; (2) Bryant-Ashby and the DOE thus had knowledge of Plaintiff's complaint; and (3) Plaintiff was subjected to an adverse employment action. Moreover, with respect to the fourth element, although "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which ultimately requires "proof that the desire to retaliate was the but-for cause of the challenged employment action," *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528, 2533 (2013), plaintiffs may nevertheless "demonstrate causation at the *prima facie* stage on summary judgment . . . indirectly through temporal proximity," *Kwan*, 737 F.3d at 845. Because the three-day period from Plaintiff's complaint to her termination is sufficiently short to make a *prima facie* showing of causation indirectly through temporal proximity, *cf. Kwan*, 737 F.3d 845 (finding three-week period sufficiently proximate), Plaintiff has met her initial burden and raised a presumption of retaliation, thus shifting the burden back to Defendants.

10

Here, Defendants have proffered two non-retaliatory, ostensibly legitimate justifications for firing Plaintiff: (1) the DOE was "ramping down" and reducing its workforce by releasing temporary employees, and (2) Plaintiff had a poor attendance record. These "neutral justification[s] could certainly be credited by a reasonable finder of fact. On [D]efendants' motion, however, the issue is whether a reasonable jury could alternatively find [these] justification[s] pretextual." *James*, 2017 WL 3923675, at *16; *cf. Kwan*, 737 F.3d at 846 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action."). The Court concludes that a jury could so find, because the evidence of record contradicts Defendants' proffered justifications.

With respect to Plaintiff's attendance, Bryant-Ashby testified in her deposition that she: (1) had recommended Plaintiff for the position in the Special Events unit in November 2013 because Plaintiff "had done such a great job" during her two months in the Eligibility & Compliance unit, *see* Bryant-Ashby Dep. at 59-61, 70, 74; (2) had no problems with Plaintiff's attendance before she transferred to the Special Events unit, *see id.* at 123; and (3) only took issue with Plaintiff's attendance after she returned to the Eligibility & Compliance unit, *see id.* at 125-27. There is no genuine dispute, however, that Plaintiff was transferred back to the Eligibility & Compliance unit on December 2, 2013, and was fired on December 4, 2013. Nor have Defendants proffered evidence that Plaintiff was absent from work on any of those three days. Bryant-Ashby's purported justification based on Plaintiff's attendance record after her return is thus, on its face, incredible.[5]

---

[5] Putting these contradictions aside, Defendants also fail to support their repeated claim that Plaintiff was absent six times and late thirteen times during her employment with the DOE. By way of evidence, they offer only an incomplete and barely legible computer printout indicating the hours Plaintiff worked between September 19, 2013, and December 2, 2013. *See generally* Attendance Report. Because it does not indicate Plaintiff's typical work

Similarly, with respect to the alleged reduction in force, Bryant-Ashby testified that she: (1) had initially retained Plaintiff even after she began releasing other temporary employees, *see id.* at 61; (2) had told Plaintiff the position in the Special Events unit could eventually become permanent and offer benefits, *see id.* at 64-66; (3) did not make the decision to terminate Plaintiff until the week of December 2, 2013, *see id.* at 125-26, after Plaintiff complained to her about Rivera's sexual harassment; and (4) "do[es]n't know" whether she would have terminated Plaintiff when she did if Plaintiff had not moved back to Eligibility & Compliance from Special Events after her harassment complaint, *id.* at 141. In addition, there is evidence that fifteen of the twenty temporary employees hired at the same time as Plaintiff were released at least one month, and most more than two months, after she was. *See* Murrell Decl. Ex. F, ECF No. 45-8. Construed in the light most favorable to Plaintiff, as they must be, these facts more plausibly support the inference that, until Plaintiff complained about Rivera's sexual harassment, Bryant-Ashby not only had no intention of firing her, but in fact considered her a prime candidate for a permanent position.

In sum, Bryant-Ashby's inconsistent and contradictory explanations for Plaintiff's termination, combined with the close temporal proximity between their December 2, 2013 conversation and Plaintiff's termination, are more than sufficient to create a genuine dispute of material fact as to whether Plaintiff's complaint of sexual harassment was a but-for cause of her termination.

---

schedule nor distinguish absences due to holidays such as Thanksgiving, however, and because Plaintiff has come forward with evidence tending to show her good attendance, the report fails to establish there is no genuine dispute as to her absences and lateness.

B.  **NYCHRL**

As with Plaintiff's hostile work environment claims, the standard for liability under the NYCHRL is more expansive than under *McDonnell Douglas*. *See, e.g.*, *Kwan*, 737 F.3d at 843 n.3 (citing *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 181 (S.D.N.Y. 2011)) ("[T]o the extent that the defendant has failed to show it is entitled to summary judgment under *McDonnell Douglas*, it would not be entitled to summary judgment under the more expansive standard of the NYCHRL."); *accord Dillon*, 85 F. Supp. 3d at 665-66. Accordingly, Defendants' motion for summary judgment as to both of Plaintiff's retaliation claims must also be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED. The Clerk of Court is directed to terminate the motion pending at ECF No. 45.

**SO ORDERED.**

s/ WFK II

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated:  September 29, 2017
        Brooklyn, New York